IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES M RAPER, JR.                                                                                    PLAINTIFF

v.                                           Civil No. 4:22-cv-04057

ROSE BRAYLEE                                                                                       DEFENDANTS

## REPORT AND RECOMMENDATION

Before the Court is Defendant Rose Braylee's (1) Motion to Dismiss (ECF No. 16); and Motion to Revoke Plaintiff's *in forma pauperis* status (ECF No. 21). Plaintiff has filed two Responses in opposition to the Motion to Dismiss (ECF Nos. 23, 28), and one Response to the Motion to Revoke (ECF No. 27). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

### I. BACKGROUND

Plaintiff filed his original Complaint on June 30, 2023. (ECF No. 1). On July 20, 2022, Plaintiff was directed to file an Amended Complaint on the Court approved Complaint Form. (ECF No. 7). Plaintiff filed a Response to this July 20, 2022 Order on August 8, 2022. (ECF No. 8). However, this Response was not on the Court approved complaint form, and the Court again ordered Plaintiff to file an Amended Complaint on the Court's approved complaint form. (ECF No. 9). Plaintiff submitted his Amended Complaint on the Court approved form on September 1, 2022. (ECF No. 11). After a review of the Amended Complaint, the Court again directed the Plaintiff to amend his complaint due to the fact Plaintiff had not clearly stated how the Defendant violated his federal constitutional rights or possibly stated frivolous claims. (ECF No. 12). Plaintiff filed his Second Amended Complaint on September 13, 2022. (ECF No. 13). The Court

1

then issued service on Defendant of this Second Amended Complaint. (ECF Nos. 14, 15). Defendant filed the instant Motion to Dismiss with Brief in Support on October 24, 2022. (ECF Nos. 16, 17). The Court then directed Plaintiff to respond to Defendant's Motion to Dismiss. (ECF No. 18). Plaintiff did so in two separate documents. (ECF Nos. 23, 28).

Defendant also filed a Motion to Revoke Plaintiff's *In Forma Paupris* Status and Brief in Support. (ECF Nos. 21, 22). Plaintiff responded on November 10, 2022. (ECF No. 27).

Plaintiff is currently incarcerated in the Arkansas Division of Corrections Pine Bluff Unit. His claims in this lawsuit stem from alleged civil rights violations while he was incarcerated in the Southwest Arkansas Community Correction Center ("SWACCC") in Texarkana, Arkansas in July and August 2021. In his Second Amended Complaint, Plaintiff names Rose Braley, Head of Commissary, as the sole Defendant in this matter. Plaintiff sues Defendant in both her individual and official capacities and is seeking compensatory and punitive damages. (ECF No. 13, pp. 2, 4, and 8).

Plaintiff alleges five claims against Defendant: (1) excessive force; (2) endangerment; (3) conditions of confinement; (4) cruel and unusual punishment; and (5) recklessness. *Id*. at 4. Plaintiff explains that these claims arose from Defendants refusal to follow "CDC, ADC guidelines."[1] Further, he alleges she knowingly introduced "COVID-19 Delta Variant" (hereinafter "COVID-19") to non-positive residents. Finally, Plaintiff alleges he contracted COVID-19 and his life was in danger. *Id.* More specifically, Plaintiff alleges:

> [Defendant] works at SWACC[C] as head of comisary(sic). She, however, is not an ADC employee. She works for the private company Keefe Int.
>
> [Defendant] is allowed to discipline residents.

---

[1] The Court notes Plaintiff's use of the abbreviation "CDC" indicates the Center for Disease Control and Prevention, and his use of the abbreviation "ADC" indicates the Arkansas Department of Corrections.

2

> [Defendant] continued to come to work and [dispense] comisary (sic) 5 days a week even while caring for 5 family members who caught [COVID-19].
>
> [Defendant] continued to come maskless to work after she contracted [COVID-19], and ` gave the three residents who worked for her the fatal disease. She only stopped working after the three residents tested positive.
>
> All residents had tested negative up to this point. The disease infected myself along with at least 250 other residents. Residents had no contact with outsiders and all ADC employees had to follow employer guidelines.

*Id*. at 5-6.

For his official capacity claim, Plaintiff alleges:

> [Defendant] refused to wear a mask when CDC and ADC mandates required them. She also refused to quarantine herself when she was exposed, notify staff of positive . . . (illegible), and take off work when she showed signs and symptoms.

*Id*. at 7.

In her Motion to Dismiss and Brief in Support, Defendant asserts Plaintiff fails to state a claim upon which relief can be granted despite his six attempts to do so.[2] (ECF No. 17, p. 2). Defendant argues Plaintiff has failed to state facts meeting the objective and subjective prongs of an Eighth Amendment claim. *Id*. at 3. Defendant interprets Plaintiff's Second Amended Complaint to allege Defendant failed to follow CDC and ADC guidelines by returning to work after "potentially contracting" COVID-19 and failing to wear a mask. *Id*. at 4. Defendant argues that Plaintiff alleges Defendant "may have known that she was possibly exposed to COVID-19." *Id*. at 17. Defendant specifically argues there is no allegation that Defendant knew she was infected when she came to work. *Id*. Further, Defendant argues Plaintiff never alleges Defendant exhibited signs and symptoms while still coming in to work. *Id*. Finally, Defendant interprets the Amended

---

[2] Plaintiff amended his original Complaint twice in this matter. (ECF Nos. 1, 11, 13). Plaintiff also previously filed a claim against Defendant regarding the same set of facts and amended his complaint in that matter twice. *See Raper v. Maxwell*, Civ. No. 4:21-cv-04067 (W.D. Ark. June 6, 2022). The Court believes the compilation of these six amendments is the basis for Defendant's assertion to defending six iterations of this claim.

Complaint to infer the fact that Defendant did not realize she was infected with COVID-19 until three residents of SWACC tested positive, and she stopped coming in to work at that point. *Id*. According to Defendant, the allegations, as she interprets them, do not rise above negligence and are insufficient to state an Eighth Amendment claim. *Id.*

Defendant also argues Plaintiff's claims do not establish the requisite causal link for a Section 1983 claim because there are no facts alleged as to how Defendant caused Plaintiff to contract COVID-19. *Id.* at 6-7.[3]

Plaintiff argues in his first Responses to Defendant's Motion to Dismiss: (1) Defendant is not entitled to qualified immunity as she is not a state employee (ECF No. 23, pp. 2-3); (2) Defendant acted with deliberate indifference when she failed to follow "ADC, CDC, or any COVID-19 guidelines" (*Id*. at 3); (3) Plaintiff's Second Amended Complaint clearly states that Defendant came to work with COVID-19 and did not leave until the inmates that worked with her were exposed (*Id*. at 4-5); (4) Defendant came to work after contracting COVID-19 and then she was sent home after testing positive (*Id*. at 5); and (5) Defendant's counsel admits Defendant came to work after contracting COVID-19 and this action put inmates and ADC employees at risk (*Id*. at 5-6).[4]

In his supplemental response, Plaintiff argues: (1) if his Second Amended Complaint needed dismissing, the Court would have screened it out initially, and since the Court did not, then it must have enough merit to survive this Motion to Dismiss (ECF No. 28, pp 2-3); (2) Defendant's claim that six of Plaintiff's complaints on this issue have been dismissed is deceptive (*Id*. at 3);

---

[3] Notably, Defendant did not move to dismiss Plaintiff's official capacity claim. (ECF No. 17).

[4] The Court notes Defendant has not asserted a qualified immunity claim. Accordingly, the Court need not address Plaintiff's argument regarding it.

and (3) once discovery is done the Defendant will have the opportunity to file a motion for summary judgment and Plaintiff can have the evidence he needs to prove a prima facia case against Defendant (*Id*. at 4).

Finally, in her Motion to Revoke and Brief in Support, Defendant argues Plaintiff should not be allowed to proceed *in forma pauperis* because he has three previous strikes under 28 U.S.C. § 1915(g). (ECF Nos. 21, 22). Defendant lists three of Plaintiff's cases which were dismissed and according to Defendant, strikes recommended in the Orders of dismissal. These include: *Raper v. Deen*, Civ. No. 4:22-cv-04001 (W.D. Ark. April 29, 2022); *Raper v. State of Arkansas*, Civ. No. 4:21-cv-04050 (W.D. Ark. Nov. 18, 2021); and *Raper v. Puryear*, Civ. No. 4:21-cv-01236 (E.D. Ark. March 28, 2022). Defendant goes on to list additional cases in which Plaintiff's complaints were dismissed, however, she makes no arguments these cases constituted strikes under Section 1915(g). Accordingly, the Court need not consider those additional cases. (ECF No. 22, p. 2).

Plaintiff responded to Defendant's Motion to Revoke arguing (1) even though strikes were recommended the Court did not find that Section 1915(g) applied (ECF No. 27, p 2); (2) the Court would not have allowed Plaintiff to proceed if Section 1915(g) prevented it (*Id.*); (3) Defendant should be identified by his Arkansas Department of Corrections number (*Id.* at 2-3); and (4) if the Court revoked Plaintiff's IFP status, he requests notice to pay the remaining balance on the filing fee.[5]

## II. MOTION TO REVOKE

First, the Court notes the language used in the Order of Dismissal in *Raper v. Deen,* does not enforce a strike under Section 1915(g) against Plaintiff. Order of Dismissal, *Raper v. Deen,*

---

[5] Plaintiff makes additional arguments on unrelated discover matters that do not warrant addressing herein. If Plaintiff would like to bring a discovery matter to the Court's attention he must do so in compliance with the Federal Rules of Civil Procedure and through a separate motion.

Civ. No. 4:22-cv-04001 (W.D. Ark. April 29, 2022) (ECF No. 17).  Instead, that Order states: "Plaintiff is warned that a dismissal of this case may be counted as a strike for purposes of 29 U.S.C. § 1915(g), and the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial consideration."  *Id.* at 1.  Accordingly, the Court will now make the referenced consideration to determine if a strike is warranted against Plaintiff for the dismissal of *Raper v. Deen*.

In *Raper v. Deen*, the Honorable Susan O. Hickey dismissed Plaintiff's Complaint based on the undersigned's Report and Recommendation at the preservice screening stage.  *Id*.  Plaintiff's claims were dismissed based solely on the grounds the Defendant was immune from suit and the official capacity claims were barred by Eleventh Amendment immunity. *Id*.  Section 1915(g) provides for dismissal and strikes in the following specific instances:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  However, Section 1915(g) does not include dismissals based on immunity bars.  *Castillo-Alvarez v. Krukow*, 768 F.3d 1219, 1220 (8th Cir. 2014).  Accordingly, after appropriate consideration in compliance with the Order of Dismissal in *Raper v. Deen*, the Court will not consider *Raper v. Deen* a dismissal warranting a 1915(g) strike against Plaintiff.  The Court need not analyze the remaining cases as Plaintiff requires three strikes to warrant revocation of his IFP status.  *Castillo-Alverez*, 798 F.3d at 1220.  Plaintiff should be allowed to maintain his IFP status herein.  *See Castillo-Alvarez*, 768 F.3d at 1220.

6

### III. MOTION TO DISMISS

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

In determining whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft,* 566 U.S. 678. These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.*. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. A plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.*

#### A. Conditions of Confinement

Although Plaintiff listed five statements under the claims section in his Second Amended Complaint, all of these statements,[6] are construed by the Court as condition of confinement claims.

---

[6] One of Plaintiff's five statements is listed as "excessive force." However, Plaintiff only lists the phrase "excessive force" under in his list of claims. He makes no additional allegations of any

Thus, implicating the Eighth Amendment, relating to Defendant's failure to follow the SWACCC's rules relating to COVID-19 and exposing Plaintiff to COVID-19.[7] Accordingly, the Court construes Plaintiff's Second Amended Complaint to set forth one individual capacity claim and one official capacity claim for violation of his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement.[8]

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (internal citation and quotations omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Furthermore, the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, the Eighth Circuit has made clear, a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*,

---

force used against him by Defendant. Without any facts relating to force being used against Plaintiff, he has failed to allege a plausible claim of excessive force.

[7] Covid-19 is a disease caused by a novel coronavirus that began infecting humans in late 2019. *Frazier v. Kelley,* 460 F. Supp. 3d 799, 810 (E.D. Ark. 2020). The World Health Organization declared Covid-19 a pandemic on March 11, 2020. *Id.* The Covid-19 pandemic has created a public health emergency. *Id*. In addition, Covid-19 has proven highly contagious in congregate environments such as nursing home facilities, cruise ships, naval aircraft carriers, and prisons. *Id.* There is no cure for Covid-19, and once contracted it can have life-threatening consequences, particularly for people who have certain underlying medical conditions, have a disability, or are over the age of 50. *Id.* The incubation period for Covid-19 is typically five days but can vary from as short as two days to an infected individual never developing symptoms. *Id.* There is evidence that transmission can occur before the development of infection from infected individuals who remain asymptomatic or never develop symptoms. *Id.*

[8] The Parties do not dispute Plaintiff's status as a convicted inmate at the time in question.

382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*. The Eighth Circuit has consistently held "mere negligence or inadvertence does not rise to the level of deliberate indifference." *Kulkay v. Roy,* 847F.3d 637, 643 (8th Cir. 2017) (citing *Schaub v. VonWald,* 638 F.3d 905, 014 (8th Cir. 2011)("Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate.") (internal quotations omitted).

Despite Defendant's contrary interpretation of Plaintiff's allegations in his Second Amended Complaint, the Plaintiff clearly makes the following factual allegations against Defendant: (a) Defendant continued to come to work while caring for family members with COVID-19 (ECF No. 13, p. 6); (b) Defendant continued to come maskless to work after she contracted COVID-19 (ECF No. 13, p. 6); (c) Defendant gave three residents who worked for her COVID-19 (ECF No. 13, p. 6); (d) Defendant only stopped coming to work after the three residents tested positive (ECF No. 13, p. 6); (e) all residents had tested negative up to this point and then 250 residents, including Plaintiff, contracted COVID-19 (ECF No. 13, p. 6); (f) the residents had no contact with outsiders other than the staff at SWACCC (ECF No. 13, p. 6); and (g) Defendant

9

failed to wear a mask or take off work when she showed signs and symptoms of COVID-19 (ECF No. 13, p. 7).[9]

The Court finds these allegations, given the appropriate liberal construction for a *pro se* pleader and taken as true, state a cognizable condition of confinement claim against Defendant. *See Braden,* 588 F.3d at 594; *Stone*, 364 F.3d at 914.

### B. Causal Connection

Defendant also argues Plaintiff failed to establish a causal connection between the complained of action and his injury. In order to state a plausible claim under Section 1983, Plaintiff must also show a causal link between Defendant's complained of actions, and Plaintiff's constitutional deprivation. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiff specifically alleges Defendant came to work with signs and symptoms of COVID-19, infected three inmates who worked with her, and then 250 resident, including Plaintiff, who were all previously negative for COVID-19 contracted the illness. Plaintiff also alleges he suffered

---

[9] Defendant argues Plaintiff admits that Defendant did not work after she was diagnosed with a positive COVID-19 test. (ECF No. 17, p. 5). No where in Plaintiff's Second Amended Complaint does he make this admission, but instead, Plaintiff plainly alleges Defendant came to work with COVID-19 and worked maskless with signs and symptoms of COVID-19. (ECF No. pp. 6-7). The Court acknowledges Plaintiff made a statement in his Response to the Motion to Dismiss that Defendant was sent home after testing positive for COVID-19. (ECF No. 23, p. 22). This statement can be construed as contradictory to Plaintiff's allegations in his Second Amended Complaint and will likely present an issue to be addressed through discovery and summary judgment. However, a potentially contradictory statement in pro se pleadings does not warrant dismissal at this stage. *See Stone*, 364 F.3d at 914.

various physical symptoms as a result of contracting COVID-19. Again, taking these allegations as true, and construing them liberally as is required for *pro se* pleaders at this stage, Plaintiff has provided enough factual content for the Court to draw the reasonable inference that Defendant's conduct caused the alleged injury—a COVID-19 outbreak at SWACCC which infected Plaintiff. *See Ashcroft,* 556 U.S. at 678.[10]

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendant's Motion to Dismiss (ECF No. 16) and Motion to Revoke (ECF No. 21) both be denied.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED this 11th day of April 2023**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court notes Defendant relies heavily upon the Court's previous recommendations on Plaintiff's first assertion of this claim against Defendant in 2021.  Report and Recommendation, *Raper v. Maxwell*, et. al., Civ. No. 4:21-cv-04067 (W.D. Ark. May 17, 2022) (ECF No. 43) (recommending dismissal for failure to state a claim under Rule 12(b)(6)).  However, Plaintiff's claims in the instant Second Amended Complaint, overcame the shortcomings addressed in the Court's prior recommendation in *Raper v. Maxwell*.